**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MARGARET COX )<br>6522 Lake Park Drive )<br>Greenbelt, MD 20770 )<br>              Plaintiff )<br>       v. )<br> )<br>DISTRICT OF COLUMBIA )<br>PUBLIC   EMPLOYEE   RELATIONS )<br>BOARD )<br>1100 4th Street SW )<br>Suite E630 )<br>Washington, D.C. 20024 )<br> )<br>       And )<br> )<br>CLARENE MARTIN, *in her personal* )<br>*capacity,* )<br>1100 4th Street SW )<br>Suite E630 )<br>Washington, D.C. 20024 )<br> )<br>              **Defendants** | Civil Action No: |

Now comes Plaintiff, Margaret Cox, by and through her undersigned lawyers, and states as follows for her Complaint against Defendants, the D.C. Public Employee Relations Board (PERB) and Clarene Martin (Martin).

In summary, Defendants fired Plaintiff from her position with the PERB immediately shortly after Plaintiff complained to Defendant Martin about Martin's hostile and discriminatory conduct targeted at Plaintiff because of her disability. The termination violated the District of Columbia Human Rights Act.

**I.  JURISDICTION AND PARTIES**

1.  This lawsuit is brought pursuant to the District of Columbia Human Rights Act, D.C. Code § 2-1402.11 (Prohibiting Discrimination), D.C. Code § 2-1402.61 (prohibiting retaliation) and D.C. Code § 2-1403.16 (Private Cause of Action) as a result

1

of Defendants' termination of Plaintiff in retaliation for her complaint about discrimination against her.

    2.   This Court has jurisdiction under 28 U.S.C. 1332 because the amount in controversy exceeds $75,000 and because Plaintiff is a citizen of Maryland suing an agency of the District of Columbia (the PERB) and a citizen of the District of Columbia (Defendant Martin).

    3.   Plaintiff Margaret Cox is a resident of the State of Maryland.  Ms. Cox was the Director of the Public Employee Relations Board between 1986 and 1995.  At the time relevant to this lawsuit, Plaintiff was employed by the PERB, under a renewable contract, as a part time Legal Administrative Specialist, working Tuesdays through Thursdays.

    4.   Defendant, the Public Employee Relations Board (PERB), is an impartial, quasi-judicial, independent agency of the District of Columbia government, which resolves labor-management disputes between agencies of the District government and labor organizations representing agency employees.

    5.   Defendant Clarene Martin is the Executive Director of the PERB.  As Executive Director, Ms. Martin is the principal administrative officer of the Board and performs duties that include he investigation of all petitions, requests, complaints and other matters referred or submitted to the Board. Ms. Martin was Plaintiff's first level supervisor, and she is responsible for the employment decisions at issue in this litigation.

    6.   At all times relevant hereto, Defendant Clarene Martin was acting within the scope of her authority as Director of the PERB, such the PERB is liable for Director Martin's activities and conduct toward the Plaintiff.

## II.  PERTINENT FACTS

*A. Plaintiff was a Qualified Person with a Disability and was Perceived as Disabled.*

7.  At all times relevant to this suit, Plaintiff was a qualified person with a disability for the purposes of the D.C. Human Rights Act.  She suffered a physical ailment – specifically chronic hip pain due to avascular necrosis and osteoarthritis.  The chronic hip pain limited Plaintiff's ability to perform a major life function, specifically walking.  Plaintiff's disability caused her to limp, and/or required to use a cane, crutches or assistance when walking, or to be unable to walk for periods of time.  Ultimately the disability required her to undergo surgeries, including surgery to replace her left hip.  The disability continued beyond the dates of surgery.  Indeed, until approximately early May 2016, Plaintiff regularly relied on the use of a cane to walk, and Plaintiff continues physical therapy approximately twice per week.

8.   Plaintiff's disability did not, with or without reasonable accommodation, limit her ability to perform the essential functions of the Plaintiff's position.

9.  Defendants viewed Plaintiff as a qualified individual with a disability.  To wit, and as explained below, Plaintiff asked for accommodations, in the form of the ability to work from home and to be assigned an office, rather than be required to work out of a conference room.  Additionally, Director Martin referred to Plaintiff as "crip" or "crippled" on several occasions and suggested that she use "Metro Access" for her commute to work, rather than work from home.

10. Plaintiff was diagnosed with avascular necrosis with osteoporosis in her left hip, in late 2013.  Plaintiff had already had a full hip replacement of the right hip due to the same condition in 2007.

11. As a result of her condition, Plaintiff first experienced chronic hip pain, in her left hip, which caused her to rely on the use of a cane in early 2014. The pain level became acute and debilitating in October or November 2014.

12. Plaintiff attempted to manage the hip pain conservatively, with physical therapy through the late summer of 2014.

13. During the 2014 timeframe, walking even two blocks would cause excruciating pain – even with the use of a cane.  Plaintiff also had difficulty climbing stairs, etc.

14. As of the fall of 2014 Plaintiff's pain became unbearable.  She was not able to walk any distance without pain or the use of a cane or someone to help her.  Plaintiff and her doctor realized that the conservative approach was not working and that surgery would be required.

15. Plaintiff's first surgery, which was meant to increase blood flow to her left hip, in the hope of avoiding a full hip replacement, occurred in December 2014. Following the first surgery, which was an inpatient procedure, Plaintiff was out of work for approximately 4 days.

16. Any improvement from the surgery was negated after Plaintiff fell on ice within a few months after the surgery.

17. On at least one occasion during this period, Plaintiff's co-workers had to physically assist her getting to her car, and Defendant Martin witnessed the event.

18. Plaintiff underwent a full hip replacement surgery on May 5, 2015.

19. Between the first and second surgeries, Plaintiff was unable to walk without a cane or assistance, and even then, she could only walk very short distances.

20. Even after the surgery, Plaintiff required the use of a cane if she was going to walk more than two blocks. Although on some rare occasions she felt well enough to walk those distances without assistance.

*B.  Plaintiff's Employment with the PERB*

21. Ms. Cox's principle duties involved advising the Board and Executive Director on policy and operations issues, reviewing and editing draft orders decisions and other memoranda, participating in mediations, drafting proposed rules and assisting PERB staff attorneys in investigations involving impasse proceedings, unfair labor practice complaints and representation petitions.

22. Plaintiff was initially free to work from home whenever she wished, without prior approval, Plaintiff's preference was to work at the PERB office as much as possible to have the opportunity to work directly with the Director and staff attorneys.

23. Over the course of her employment with the PERB, Defendant Martin began expecting Plaintiff to work from the office, rather than teleworking from home, because of the degree to which Defendant Martin relied on Plaintiff.

24. Based on statements, including by Board members, the integral nature of Plaintiff's work to the functioning of the PERB, and the long-term nature of the projects that Defendant Martin assigned to her, Plaintiff expected that her contract would be renewed in future years.

25. In approximately April 2015, Ms. Martin confirmed that she had funding in the budget to continue employing Plaintiff through at least the end of the fiscal year (September 30, 2015), and Director Martin told Plaintiff that she would extend her contract until that date.

*C.  Discriminatory Treatment and Hostile Work Environment Based on Disability*

26. Plaintiff's doctor advised her to undergo physical therapy and wrote a note to the Defendant indicating that Plaintiff would need to work from home for a period of time until her recovery was well under way.

27. When Defendant Martin saw the note she tossed it back at Plaintiff and said "I don't need that."

28. While Plaintiffs was on leave, associated with the first surgery in December 2014-January 2015, Defendants moved Plaintiff from her office which was located close to the attorneys whom she worked with to a smaller office, across the hall, without telling Plaintiff or permitting her to pack her personal belongings.

29. While Plaintiff was out on leave for a second surgery, in late May 2015, Defendants moved Plaintiff out of her (second) designated office and relocated her to a temporary conference room which was actually the PERB hearing room.  To meet with the attorneys with whom she worked, it took her between five and ten minutes to walk, which caused her significant pain. Among other things, because the conference room was the hearing room, whenever a hearing was taking place, Plaintiff would have to find another place to work.  The conference room did not have a comfortable office chair, and Plaintiff did not even have a telephone. Nor was there any place to store Plaintiff's personal effects.  The room was kept so cold that it added to Plaintiff's pain, stiffness and general discomfort.

30. While she was still on leave recuperating from the second surgery, after Plaintiff learned that she had been removed from her designated office and moved to the conference room, Plaintiff asked Director Martin for an accommodation – specifically to

6

be permitted to work from home (with the exception of the monthly Board meeting) during her post-surgery rehabilitation.  Plaintiff also asked to make sure that she had a comfortable place to work when she returned.  Director Martin rejected Plaintiff's request and became very upset with Plaintiff after receiving the request for an accommodation.

31. Following her return to work following her second surgery, in June 2015, Defendant Martin continued to make frequent demeaning and hurtful comments to Plaintiff about her disability, including regularly referring her as "Crip" as she navigated the office, in pain.

32. On one occasion, Defendant asked Plaintiff to retrieve a reference book. When Plaintiff showed that the effort of standing and walking toward the book caused her extreme pain, Defendant Martin said "forget it crip, I'll get the book."

33. On another occasion, when Plaintiff asked Defendant Martin for approval to work from home, under the Defendants' telework policy, Defendant Martin rejected the request (without providing any reason) and told Plaintiff that she should use "Metro Access." According to the Washington Metropolitan Area Transit Authority (WMATA), Metro Access is "a shared-ride, door-to-door, paratransit service for people whose disability prevents them from using bus or rail."

34. On another occasion, Plaintiff asked the receptionist for coffee.  Defendant Martin yelled at the receptionist, telling her not to do things that the attorneys could do for themselves.  Later Defendant Martin told Plaintiff that she should not have yelled at the receptionist for helping Plaintiff because Plaintiff was "old and crippled," and then laughed riotously.

*D. Protected Activity and Termination*

35. In June 2015, Plaintiff sent Director Martin an email explaining that she was unable to travel away from her home (including using Metro Access to commute to work) due to the risk of infection to her stitches, which had not yet fully healed.  In this e-mail Plaintiff asked that Defendant Martin cease the discriminatory and hostile conduct that was targeted against her because of her physical disability.

36. Shortly after Plaintiff sent the above-referenced email, Defendant Martin sent Plaintiff a letter stating that she was being terminated effective June 30, 2015, which was one month prior to the natural renewal date and several months before the end of the contract extension.

37. Also in June 2015 – after Plaintiff sent the above-referenced email to Defendant Martin – Plaintiff contacted the PERB Chairperson, Charles Murphy, to advise him about Defendant Martin's discriminatory and hostile treatment of her.  Chairperson Murphy responded that he had received several complaints about Defendant Martin.

38. Plaintiff's termination from her position at the PERB became effective on June 30, 2015.

39. Director Martin's stated reason for terminating Plaintiff was that there was insufficient funding in the budget to continue employing contract.  This reason was false, and a pretext for discrimination and retaliation.

## COUNT I: DISCRIMINATION BASED ON DISABILITY

40. Plaintiff restates each of the foregoing paragraphs as if they were restated here.

41. At all times relevant to this Complaint, Plaintiff was a qualified individual with a disability, under the D.C. Human Rights Act. In the alternative, Defendants regarded Plaintiff as having a disability.

42. Plaintiff requested a reasonable accommodation from Defendants, which Defendants rejected for no valid reason and without engaging in the collaborative process to find a reasonable accommodation that worked.

43. Shortly after Plaintiff requested an accommodation, Defendants terminated her because of her disability.

44. As a result of the denial of accommodation and termination, Plaintiff experienced significant emotional pain and suffering, including depression and anxiety accompanied by fatigue and weight loss.

45. As a result of the denial of accommodation and termination, Plaintiff experienced financial harm, including loss of income and loss of future income.

46. Defendants' conduct toward Plaintiff, including the decision to reject her request for accommodation and to terminate her because of her disability, was malicious and/or in reckless disregard for the Plaintiff's rights under the D.C. Human Rights Act. Consequently Plaintiff is entitled to punitive damages.

47. At all times relevant hereto, Defendant Clarene Martin was acting within the scope of her authority as Director of the PERB.  As a result, the PERB is liable for Defendant Martin's activities and conduct toward the Plaintiff and is vicariously liable to the Plaintiff for punitive damages.

**COUNT II: HOSTILE ENVIRONMENT BASED ON DISABILITY**

48. Plaintiff restates each of the foregoing paragraphs as if they were restated here.

49. At all times relevant to this Complaint, Plaintiff was a qualified individual with a disability, under the D.C. Human Rights Act. In the alternative, Defendants regarded Plaintiff as having a disability.

50. Defendants created a hostile work environment against the Plaintiff because of her disability by, among other things: (1) removing her to an office that required her to walk longer distances in order to attend meetings or confer with colleagues and the director; (2) boxing up her office while she was recuperating from surgery and moving her into a conference room, that was kept uncomfortably cold and that was not outfitted with a personal desk or office chair; (3) refusing her request to work from home; (4) instructing Plaintiff to take Metro Access to get to and from the Metro for her daily commute; (5) referring to her in public and private as "Crip" and "cripple" on several occasions; (6) and threatening to terminate Plaintiff; and (7) terminating Plaintiff.

51. As a result of the hostile working environment, Plaintiff experienced significant emotional pain and suffering, including depression and anxiety accompanied by fatigue and severe eating disorders and weight loss.

52. Defendants' conduct toward Plaintiff, including the imposition of a hostile work environment against her because of her disability, was malicious and/or in reckless disregard for the Plaintiff's rights under the D.C. Human Rights Act. Consequently Plaintiff is entitled to punitive damages.

53. At all times relevant hereto, Defendant Clarene Martin was acting within the scope of her authority as Director of the PERB, such that the PERB is liable for

Defendant Martin's activities and conduct toward the Plaintiff and is vicariously liable to the Plaintiff for punitive damages.

## COUNT III: RETALIATION

54. Plaintiff restates each of the foregoing paragraphs as if they were restated here.

55. At all times relevant to this Complaint, Plaintiff was a qualified individual with a disability, under the D.C. Human Rights Act. In the alternative, Defendants regarded Plaintiff as having a disability.

56. Plaintiff engaged in protected activity by (1) requesting a reasonable accommodation from Defendants, and (2) complaining to Defendant Martin and Chairperson Murphy, in June 2015, about the discriminatory conduct and hostile environment to which she had been subjected.  Shortly after Plaintiff sent her email complaining about discrimination to the Director, Director Martin terminated Plaintiff in retaliation for her protected complaint.

57. As a result of the termination, Plaintiff experienced significant emotional pain and suffering, including depression and anxiety accompanied by fatigue and weight loss.

58. As a result of the termination, Plaintiff experienced financial harm, including loss of income and loss of future income.

59. Defendants' conduct toward Plaintiff, including the decision to terminate her because of retaliation, was malicious and/or in reckless disregard for the Plaintiff's rights under the D.C. Human Rights Act. Consequently Plaintiff is entitled to punitive damages.

60. At all times relevant hereto, Defendant Clarene Martin was acting within the scope of her authority as Director of the PERB, such that the PERB is liable for Director

11

Martin's activities and conduct toward the Plaintiff and is vicariously liable to the Plaintiff for punitive damages.

## RELIEF REQUESTED

61. WHEREFORE, Plaintiff prays that this Court:

62. Declare that the employment practices complained of in this Complaint are unlawful in that they violate the District of Columbia Human Rights Act;

63. Order the Defendants to make the Plaintiff whole by paying Plaintiff: (1) monetary damages for lost income at a rate of approximately $100,000 per year, as proved at trial; (2) compensatory damages in an amount to be determined at trial; and (3) punitive damages to be determined at trial;

64. Order the Defendant to pay the Plaintiff's attorneys fees and other costs of litigation; and

65. Grant such other and further relief to the Plaintiff as the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Respectfully Submitted,

Leslie D. Alderman III (DC Bar No. 477750)
ALDERMAN, DEVORSETZ & HORA, PLLC
1025 Connecticut Ave., NW, Suite 615
Washington, DC 20036
Tel: 202-969-8220
Fax: 202-969-8224
lalderman@adhlawfirm.com
Attorney for Plaintiff